UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERESE JOHNSON,

              Plaintiff,                           No. 21-10930

v.                                     Honorable Nancy G. Edmunds

LOUIS DEJOY, POSTMASTER GENERAL
OF THE UNITED STATES,

              Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [19]**

This is a disability discrimination case brought by Plaintiff Cherese Johnson against the United States Postal Service.  (Compl., ECF No. 1.)  Plaintiff alleges disability discrimination disparate treatment (Count I), failure to accommodate (Count II), failure to engage in the interactive process (Count III), and hostile environment retaliation (Count IV).  (ECF No. 1.)  The matter is before the Court on Defendant's motion for summary judgment.  (ECF No. 19.)  Plaintiff filed an amended response opposing the motion.  (ECF No. 24.)  Defendant filed a reply.  (ECF No. 25.)  The Court finds that the decision process would not be significantly aided by oral argument.  Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), Defendant's motion was decided on the briefs and without oral argument.  For the reasons set forth below, the Court grants Defendant's motion for summary judgment.

## I.    Background

Plaintiff has been employed by the United States Postal Service since 2005. (Johnson Dep., ECF 19-2, PageID.168.)  She became a full-time carrier for the Postal Service in May 2013[1].  (*Id*.)  She brings claims for discrimination, retaliation and harassment from 2014 through 2017, the time frame when she was on light-duty and allegedly received eight hours of work only about 70 percent of the time.  (*Id*., PageID.177.)  She argues that work and tasks were available, which were within her restrictions, yet she often was not assigned 8 hours of work in a day, nor overtime.

Plaintiff's first restriction on her ability to perform duties was in 2010, when she was restricted to no more than three hours of stair-climbing in a day.  (ECF No. 19-2, PageID.174.)  This restriction was the result of an injury that occurred when she slipped and fell off a porch.  (*Id*.)  Plaintiff's 2010 request for light duty assignment was permitted at that time and since most routes had stairs, she could only do half of a route.  (*Id*.)  Following a 2014 knee procedure, Plaintiff came back to work requesting an accommodation of no stair climbing over 3 hours and no lifting more than 15 pounds.  (ECF No. 24-6.)  The restrictions then progressed to only one to two hours of stair climbing, and lifting 10 to 20 pounds.  (ECF No. 19-2, PageID.174.)

Plaintiff states that her ability to walk on flat surfaces was not limited, and she stayed on the "overtime desired list."  (ECF No. 24-6.)  At that point she would carry a smaller portion of the route, due to the stair limitation of one to two hours.  (ECF No. 19-

---

[1] The response and Plaintiff's declaration state that she became a full-time regular mail carrier in May 2013, yet in her deposition she testified that she was a "T6" during this time and to become a "regular carrier" she would have had to "bid on a route" that she could do, that bids are determined by seniority, and that she did not have enough seniority to get one of the four stairless routes.  (ECF No. 19-2, PageID.177.)

2, PageID.175.)  The remaining hours of a workday were then "made up" by doing other tasks like casing (sorting the mail in preparation for delivery to a particular route), mail collection at the drive-up blue mailboxes, delivering express mail, or processing "nixies" (mail that is addressed to a house that is known to be vacant).  (ECF No. 19-2, PageID.172, 175-76.)  She then had another knee scope and her restrictions grew to preclude stairs altogether.  (ECF No. 19-2, PageID.175.)  Plaintiff also testified that she could not drive a postal delivery vehicle because she could not climb in and out of the truck all day to deliver mail.  (ECF No. 19-2, PageID.174.)

Plaintiff estimates that from 2010 to 2014, she was assigned eight hours of work per day about 95 percent of the time.  (*Id.*, PageID.177-78.)  Mr. Solar was the supervisor at that time.  (*Id.*, PageID.178.)  After he left around 2014, she was no longer assigned eight hours of work with the same frequency from the new people doing the route assignments.  (*Id.*)  When Plaintiff asked individual supervisors why she was not getting 8 hours of work each day, each of them told her that they were not obligated under the collective bargaining agreement (CBA) to assign eight hours per day.  (ECF No. 19-2, PageID.180, 181.)

Plaintiff filed grievances alleging violations of the CBA for failing to make best efforts to find 8 hours of work per day for her.  She also filed a charge with the National Labor Relations Board against her union.  (ECF No. 19-2, PageID.188.)  Plaintiff brought an EEO complaint against Christopher Starks and Leon McPherson in 2014 alleging that the supervisors were not giving her 8 hours of work per day.  (ECF No. 19-2, PageID.180; ECF No. 24-6.)  At the related redress hearing, Plaintiff met George Glover, who in 2014 had been made Manager of the North End location where Plaintiff was stationed.  (ECF

No. 24-6.)  Plaintiff alleges that for approximately 30 days following this meeting, Sparks and McPherson scheduled Plaintiff for at least 8 hours a day by giving her route assignments within her restrictions, with flat surfaces and limited stair climbing.  (ECF No. 24-6.)  She alleges that after 30 days, she was again denied work that would have been within her restrictions.  She alleges that for the next 2 years, until April 2016, Glover, Sparks and McPherson "created an abusive working environment" around her.  (*Id.*)

Plaintiff admits that she requested "light duty" assignment, rather than requesting an accommodation pursuant to the Rehabilitation Act.  (ECF No. 19-2, PageID.182-83; EEO Dep., ECF No. 19-5, PageID.221, 222.)  In 2016, Johnson's supervisors set up a meeting with the Disability and Reasonable Accommodation Committee (DRAC), which would have had the ability to reassign Plaintiff to a position within her physical restrictions.  (ECF No. 19-2, PageID.183.)  The meeting was held on June 15, 2016.  (ECF No. 19-8.)  Plaintiff testified that there was "no room for light-duty" within the DRAC, and that the process was for "limited-duty" carriers to address on-the-job injuries.  (ECF No. 19-2, PageID.183.)  She also testified that the committee wanted her to give up her position and to change her craft to another craft because of her restrictions.  (*Id.*)  She did not want to change her carrier craft.  Had she changed the craft, she would have kept her "years" in terms of retirement, but she would not have kept the same seniority in terms of bidding on jobs or routes.  (ECF No. 19-2, PageID.184.)  In a follow-up to the meeting, Plaintiff was asked to submit medical documentation to support her disability.  A letter dated August 9, 2016, shows that medical documentation had not yet been received.  (ECF No. 19-8.)  The letter indicated that if medical documentation were not received by

August 26, 2016, the DRAC request would be closed.  (*Id.*)  When questioned, Plaintiff did not recall if she had ever sent the documentation.  (ECF No. 19-2, PageID.184.)

Plaintiff alleges that she "recently" realized that "Glover, Sparks and McPherson started in 2014 by sending her out on her T-6 route early in the morning so that she was out of the office while they assigned all of (sic) route assignments that were within her restrictions to non-disabled carriers and non-EEO filing carriers."[2]  (Pl.'s Response ¶ 26, ECF No. 24.)   With her response, Plaintiff included an exhibit of "contemporaneous descriptions of all the adverse employment acts that Glover, Sparks and McPherson were subjecting Plaintiff to every day" and "contemporaneous descriptions of the other similarly situated individuals that were outside the protected class," who were treated more favorably than Plaintiff.  (ECF No. 24, PageID.460;  ECF 24-4.)

Plaintiff estimates that in 2017 she started receiving eight hours of work per day about 90 percent of the time, which had continued to the time of the deposition in this

---

[2] Plaintiff's response contains few direct citations to the record for this or many of its allegations.  Exhibit 5 to Plaintiff's response purports to be the "Declaration of Cherese Johnson" and is nearly identical to the response with its numbered paragraphs, including references to legal arguments, e.g. ¶¶ 36-43.  (ECF 24-6.)  This "declaration" has been partially rephrased in the first person (compare *id.* ¶ 31 with ¶ 32).  Merely having the Plaintiff sign a response to recast it as a "declaration" does not comply with Fed. Rule Civ. P. 56(c)(1)(A) requirement that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:  (A) citing to particular parts of materials in the records, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; . . . ."  Nor does much of the declaration appear to conform to Fed. R. Civ. P. 56(c)(4), which provides that a "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Further, "[t]he court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  Nonetheless, the Court considers this declaration to the extent that it does not conflict with Plaintiff's prior sworn testimony or other evidence of record, as discussed below.

matter. (ECF No. 19-2, PageID.178.)  Plaintiff filed this complaint in 2021.  Defendant moves for summary judgment on all claims.

## II.    Summary Judgment Standard

Summary judgment under Federal Rule of Civil Procedure 56 is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "In making this determination, 'the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.'"  *United States S.E.C. v. Sierra Brokerage Servs.*, 712 F.3d 321, 327 (6th Cir. 2013) (quoting *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). Furthermore, the "'substantive law will identify which facts are material,' and 'summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Id.* at 327 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The moving party bears the initial burden "of establishing the 'absence of evidence to support the nonmoving party's case.'"  *Spurlock v. Whitley*, 79 F. App'x 837, 839 (6th Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  "Once the moving party has met its burden, the nonmoving party 'must present affirmative evidence on critical issues sufficient to allow a jury to return a verdict in its favor.'"  *Id.* at 839 (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403 (6th Cir. 1992)).

### III.    Analysis

### A.    Discrimination Based on Disability (Counts I and II)

### 1.    Whether She Was Otherwise Qualified As A Carrier Technician

"The Rehabilitation Act, not the Americans with Disabilities Act (ADA), constitutes the exclusive remedy for a federal employee alleging disability-based discrimination." *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007) (citing 42 U.S.C. § 12111(5)(B)(i), which defines employers covered by the ADA but excluding the United States or a wholly-owned corporation thereof); *see also* The Rehabilitation Act of 1973, 29 U.S.C. § 794 (2016) ("No otherwise qualified individual with a disability in the United States, . . . shall, solely by reason of [their] disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination . . . by the United States Postal Service.").

> To recover on a claim of discrimination under either the ADA or the Rehabilitation Act, which in this circuit share the same substantive standard, "a plaintiff must show that: 1) [s]he is an individual with a disability; 2) [s]he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodation; and 3) [s]he was discharged [discriminated against] solely by reason of [her] handicap."

*Jones*, 488 F.3d at 403 (citations omitted).  Plaintiff does not allege or provide evidence of direct discrimination, therefore the Court applies the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Plaintiff bears the initial burden "to establish a prima facie case of discrimination."  *Jones*, 488 F.3d at 404.  If she does so, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment decision."  *Id.*  "[T]hen the burden returns to the plaintiff to prove by a preponderance of the evidence that the employer's proffered reason was in fact a pretext designed to mask illegal discrimination."  *Id.* at 404.

To establish a prima facie case of discrimination, Plaintiff must establish "(1) that [s]he is disabled, (2) that [s]he is otherwise qualified for the job, with or without reasonable accommodation, (3) that [s]he suffered an adverse employment action, (4) that [her] employer knew or had reason to know of [her] disability, and (5) that, following the adverse employment action, either [s]he was replaced by a nondisabled person" or "similarly situated non-protected employees were treated more favorably." *Id.* at 404. Defendant argues that Plaintiff cannot establish a prima facie case of discrimination because (1) she was "not otherwise qualified" for her position as a letter carrier, and (2) she cannot establish that non-protected employees were treated more favorably.

The parties do not dispute that the position at issue is that of "mail carrier." (ECF No. 24 ¶ 50 "like the rest of the letter carriers," ¶ 42 "similarly situated carriers".) In her response, Plaintiff fails to directly address Defendant's argument that she did not establish that she was "otherwise qualified" for the job of mail carrier.[3] (ECF 24, ¶ 38.) An individual meets the requirement of "otherwise qualified" if "'with or without reasonable accommodation, [she] can perform the *essential functions* of the position in question without endangering' her own health and safety or that of others." *Hall v. United States Postal Service*, 857 F.2d 1073, 1078 (6th Cir. 1988). "When a handicapped person is not able to perform the essential functions of the job, the court must also consider whether any 'reasonable accommodation' by the employer would enable the handicapped person to perform those functions." *Id.* at 1078 (citing *School Board of Nassau County v. Arline*, 480 U.S. 273, 287 n.17 (1987)) (emphasis omitted). The Court must "conduct an

---

[3] There is no dispute that Plaintiff satisfies the prerequisites for the position, such as educational background, skills, experience, etc. The issue is whether she can perform the essential functions of the position.

individualized inquiry and make appropriate findings of fact" to determine "whether a handicapped individual can perform the essential functions of a position and, if not, whether a reasonable accommodation will enable him or her to do so." *Id.* at 1078-79. "[A]n accommodation that eliminates an essential function of the job is not reasonable." *Id.* at 1078; *see also* 29 C.F.R. § 1630.2(n)(1), (2) ("The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires. The term "essential functions" does not include the marginal functions of the position." "The function may be essential because the reason the position exists is to perform that function.").

Written job descriptions are considered evidence of essential functions of the job. *See Bush v. Compass Group USA, Inc.*, 683 F. App'x 440, 446 (6th Cir. 2017); 29 C.F.R. § 1630.2(n)(3)(ii). But the Sixth Circuit has also noted that "the written job description is 'not dispositive.'" *Bush*, 683 F. App'x at 446. "Ordinarily, the question of whether a job function is essential 'is a question of fact that is typically not suitable for resolution on a motion for summary judgment.' Thus, we will not grant summary judgment when the 'evidence on the issue is mixed.'" *Id.* at 446 (internal citations omitted). Here, the evidence on the essential functions of the job is not mixed.

Defendant provided a job description for "carrier technician." (ECF No. 19-3.) The "functional purpose" is described as follows: "As principal carrier for a designated group of not less than five letter routes, delivers mail on foot or by vehicle on the routes during the absence of the regularly assigned carrier and provides job instruction to newly assigned carriers." (ECF No. 19-3, PageID.192.) The "duties and responsibilities" of a carrier technician include performing "complete and customary duties of a carrier (city or

special)."  (ECF No. 19-3, PageID.192.)   The "functional purpose" of a "carrier (city)" states that the carrier "[m]ay be required to carry mail weighing up to 35 pounds in shoulder satchels or other equipment and to load or unload container of mail weighing up to 70 pounds."  (ECF No. 19-3, PageID.196.)  One of the "duties and responsibilities" is to "[d]eliver[] mail along a prescribed route, on foot or by vehicle, on a regular schedule . . . ."  (*Id.*)  "Physical requirements" state that "[a]pplicants must be physically able to efficiently perform the duties of the position, which require arduous exertion (sic) involved prolonged standing, walking, bending and reaching, and may involve handling heavy containers of mail weighing up to the allowable maximum mailing weight."  (ECF No. 19-3, PageID.198.)

The Court will reference the Carrier Technician position in considering the "otherwise qualified" element.  Plaintiff does not dispute Defendant's reliance on the job description for carrier technician.[4]  Instead, Plaintiff argues that

> Ever since Cynthia Stevens became the new North End Manager around April 19, of 2016 and to the present the Plaintiff has been performing all the essential functions of all of the light duty routes and assignments that she has been assigned to because the North End Post Office has a large number of jobs that need to be done.

(ECF No. 24, PageID.460.) Plaintiff's argument is similar to *Luckiewicz v. Potter*, 670 F.Supp.2d 400 (E.D. Pa. 2009).  In *Luckiewicz*, the court rejected the plaintiff's argument that he "could perform the essential functions of his limited duty position, and that those positions are the appropriate benchmarks for the essential functions analysis." *Id.* at 408 (The court found that the relevant position was "Letter Carrier", "the position for which

---

[4] In her deposition, Plaintiff clarified that she is a "T6" carrier, which performs a different route for each of the five days of the workweek, rather than a "regular carrier", which would have bid on and been assigned a certain route.  (ECF No 19-2, PageID.176-77.)

Plaintiff was hired and this remained [his] title throughout his tenure at USPS.").  "The fact that [the] [p]laintiff was able to perform his responsibilities in the Limited Duty Program, and the fact that the USPS allowed him to perform those duties for several years, does not make [the] [p]laintiff a 'qualified individual' under the rehabilitation act."  *Id*.

Plaintiff testified that "a route is a (sic) area that we will deliver to six hours of your day, of your work day," and confirmed that "routes" were supposed to take roughly six hours to deliver.  (ECF No. 19-2, PageID.169.)  The task of casing (the organizing of the letters and flats for a particular route), is allowed approximately an hour and a half to two hours before the carrier goes to the field to deliver.  (ECF No. 19-2, PageID.172.)  As a T-6, for the five days that Plaintiff works, she has a different route for each of the five days.  (ECF No. 19-2, PageID.176.)  Plaintiff admits that for each of the assigned routes, she was supposed to finish delivering the mail on the route to which she is assigned each day.  (ECF No. 19-5, PageID.217.)

The record shows medical restrictions dated June 11, 2014, as follows:  "[N]o lifting more than fifteen pounds; if the route consists of more than three or more stairs per house then the patient can only carry three hours per route.  If the route is three stairs or less, then the patient can carry the whole route."  (ECF No. 19-6, PageID.225.)  Defendant also provided medical restrictions from the same doctor, dated December 13, 2014.  This second note regarding "Employee's Restrictions" is a form and at the top it is handwritten: "15-20 LB."  (ECF No. 19-7, PageID.226.)  By Plaintiff's testimony, her restrictions started at lifting no more than 15 pounds, then progressed to lifting 10 to 20 pounds.  (ECF No. 19-2,  ECF No. 19-5, PageID.219.)

In 2015, Plaintiff's stairs restriction went from three hours of stairs to one to two hours of stairs. (Johnson Dep. 34-35, ECF No. 19-2, PageID.175.)  When questioned about her restriction to carrying only one to two hours of stairs, and lifting no more than 10 to 20 pounds Plaintiff testified as follows: "I couldn't perform the remaining hours of the one to two hours of my restrictions, so I couldn't perform about four hours of carrying mail house to house." (ECF No. 19-5, PageID.219.)  In 2016 and 2017, Plaintiff's restrictions changed to "no stairs." (Johnson Dep. 36, ECF No. 19-2, PageID.175.)  She testified that she was able to stay on "light duty" with the restriction to "no stairs." (ECF No. 19-2, PageID. 175.)  She testifies that she was able to do an entire route, if there were no stairs, and she could still case, perform collections, deliver express mail and do the nixies that were left in the building. (ECF No. 19-2, PageID. 175.)  For routes on which she was unable to finish deliveries, she testified that, "I will return it to the station and notify my supervisor and someone else will deliver it." (Id. at 18, PageID.218.)  Even by her own testimony, Plaintiff admits that she was unable to complete four hours of each route delivery . (ECF No. 19-5, PageID.219.)

The Court finds that there is no genuine factual dispute concerning Plaintiff's inability to perform the essential functions of the carrier.  The job definition is clear that the functional purpose of the position is as carrier for a "group of not less than five letter routes", delivered on foot or by vehicle. (ECF No. 19-3, PageID.192.)  This is also supported by Plaintiff's testimony.  Finally, this Court's finding that an essential function of the position is to physically deliver mail to not less than five letter routes is consistent with findings of other courts specific to the position at issue. *See, e.g., Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996) ("One of the essential functions of a mail carrier is to

physically deliver the mail to the people along the route.  In his deposition, [the plaintiff] concedes that this was impossible for him to do.  No amount of accommodation on the part of the Postal Service would have made this possible."); *Atencio v. United States Postal Service*, 198 F. Supp. 3d 340, 359-60 (S.D.N.Y. 2016) (noting that the plaintiff herself testified that delivery of mail was the "ultimate function" of a "T-6" or "carrier technician" position and concluding that the plaintiff's "suggested accommodation would result in the reallocation of an essential function of a T-6 carrier"); *Luckiewicz*, 670 F.Supp.2d at 409 (""[o]ne of the essential functions of a mail carrier is to physically deliver the mail to the people along the route.'") (citing *Shiring*, 90 F.3d at 831)  Therefore, the Court must next determine whether any reasonable accommodation would allow Plaintiff to perform the essential duties of her mail carrier position.

"An employee can succeed under the Rehabilitation Act only if the employee can demonstrate that a specific, reasonable accommodation would have allowed her to perform the essential functions of her job."  *Prather v. Potter*, 2005 WL 8161569, at *6 (S.D. Ohio Sept. 8, 2005) (quoting *Donahue v. Consol. Rail Corp.*, 224 F.3d 226, 232 (3d Cir. 2000)).  "[C]ourts have held that an employer, including a federal employer, is not required to accommodate a handicapped individual by eliminating one of the essential functions of the job.  In other words, an accommodation that eliminates an essential function of the job is not reasonable."  *Hall*, 857 F.2d at 1078 (emphasis and internal citation omitted).

In *Jakubowski v. Christ Hospital, Inc.*, 627 F.3d 195, 202 (6th Cir. 2010), the plaintiff "admittedly had difficulty performing" essential functions and the court noted that whether he "was a qualified individual depends on whether he proposed a reasonable

accommodation to account for his disability."   "If a disabled employee requires an accommodation, the employee is saddled with the burden of proposing an accommodation and proving that it is reasonable."   *Id.* at 202.   "The burden is on the employer to present credible evidence that a reasonable accommodation is not possible in a particular situation."   *Hall*, 857 F.2d at 1080 (emphasis omitted) (citing 29 C.F.R. § 1613.704(a)) ("Because a particular function is found to be essential does not relieve the federal employer of its burden of showing that the handicapped individual cannot be reasonably accommodated. To hold otherwise, as we think the district court did, is to ignore the reasonable accommodation aspect of the 'otherwise qualified' inquiry.").

One of the accommodations identified by Plaintiff is that of Plaintiff remaining as a carrier technician but performing "all the essential functions of all of the light duty routes and assignments" and she also agreed that "they sort of piecemeal work" to her that is within her restrictions.   (ECF No. 24, PageID.460; Johnson Dep. p. 50, ECF No. 19-2, PageID.179.)

Defendant argues that Plaintiff's request to perform the light duty work relieves her of performing the essential function of the position, the delivery of mail along five entire routes.   (ECF No. 19, PageID.148-49, 151.)   In response to Plaintiff's suggested accommodation of performing "light-duty routes and assignments,"   Defendant has provided case law, including from the Sixth Circuit, holding that "employers have no duty under the Rehabilitation Act to either create a position for an employee . . . or continue providing an accommodation that it has voluntarily provided."   *Lai Ming Chui v. Donahoe*, 580 F. App'x 430, 436 (6th Cir. 2014); *Adams v. Potter*, 193 F. App'x 440, 445 (6th Cir. 2006) ("His first proposed accommodation—working for half the day from a seated

position and receiving assistance to lift seventy pounds or more—is not a reasonable accommodation because it would require the USPS to eliminate essential functions of the mail handler job, primarily lifting and moving large quantities of mail."); *Jasany v. United States Postal* Service, 755 F.2d 1244, 1250 (6th Cir. 1985) ("The post office was not required to accommodate [the plaintiff] by eliminating one of the essential functions of his job." Emphasis omitted.); *Thompson v. Henderson*, 226 F. App'x 466, 474 (6th Cir. 2007) ("Defendant is simply not required to engage Lee in temporary light-duty assignment in perpetuity."); and *Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719, 730-31 (6th Cir. 2000) (Under the ADA, the plaintiff did not meet her burden of showing that her accommodation was a reasonable one, where she suggested being assigned to a rotating type of job on a permanent basis.).  In her response, Plaintiff did not address this proposition or the case law Defendant cited in support.

Plaintiff in her response also argues that "[t]o be clear, the Plaintiff could deliver mail continuously eight hours per day and deliver an additional two or three hours of overtime mail deliveries as long as it did not involve climbing stairs."  (ECF No. 24, PageID.461 ¶ 36.)  She argues that she "could have been assigned five hours of regular time delivering to routes without stairs, three hours of delivering to houses with stairs and then assigned additional over time."  (ECF No. 24, PageID.462 ¶ 37.)  Plaintiff has not identified available stairless routes.[5]

---

[5] For example, at her EEOC deposition on May 24, 2018, Plaintiff was asked, "Was there a vacant or open job position that you could perform all the duties of between February and June of 2016?"  (ECF No. 19-5, PageID.219.)  She replied "No, not to my knowledge."  (*Id*.)  When asked the question a second time with clarification, she again answered "no."  (*Id*.)

Plaintiff fails to create a genuine issue of material fact as to whether physical mail delivery of a route is an essential function or as to whether she could perform the essential functions of the carrier position with reasonable accommodation.  Aside from Plaintiff's request to be on light-duty tasks, or suggesting stairless routes without providing evidence of the availability of the same, Plaintiff has not shown a reasonable accommodation to which Defendant must respond.  In contrast, Defendant's reliance on written job descriptions and Plaintiff's testimony of her job highlight the Plaintiff's lack of evidence on these points and show there is no genuine dispute as to the same.  The finding is also consistent with similar case law regarding USPS accommodations.  Plaintiff fails to raise a material question of fact as to whether she is "otherwise qualified" for her carrier position and fails to establish a prima facie case of discrimination.

### 2.    Disparate Treatment

Even if Plaintiff had raised an issue of material fact as to whether she is "otherwise qualified" for the carrier position, Defendant argues that Plaintiff cannot show that similarly situated non-disabled employees were treated more favorably.

Plaintiff testified that the CBA requires management to make best efforts to ensure that a light-duty carrier gets eight hours or as close to eight hours as possible."[6] (Johnson

---

[6] In her response, Plaintiff purports to quote the CBA, Article 13, to support the premise that Glover, Sparks and McPherson were required to "make every effort" to find work for her.  (ECF No. 24, PageID.455 ¶ 11.)  Plaintiff did not provide a copy of the provision of the CBA.  Defendant provided Article 13, but the only place the word "effort" appears is under General Policy Procedures: "Every effort shall be made to reassign the concerned employee within the employee's present craft or occupational group, even if such assignment reduces the number of hours of work for the supplemental work force. After all efforts are exhausted in this area, consideration will be given to reassignment to another craft or occupational group within the same installation."  (ECF No. 19-4, PageID.204, 212.)

Dep. 28, ECF No. 19-2.)  Plaintiff testified that route assignments are given by seniority, and also agreed that if there was not enough work for a light-duty employee within their restrictions, they could be sent home without eight hours of work.  (*Id.* at 27-28.)  Plaintiff identifies the "adverse employment acts" as "not providing the Plaintiff with route assignments that we now know were available throughout the 2014 to 2016 period."

Defendant argues that non-disabled mail carriers are not similarly situated to Plaintiff because they can perform all of the essential functions of the job.  (ECF No. 19, PageID.151.)  Defendant also argues that other carriers on light duty are not proper comparators because they are not outside of Johnson's protected class.  Plaintiff appears to use as a comparator "non-disabled regular" carriers and non-EEO filing carriers.  (Compl. ¶ 65, ECF No. 1; *see also* Count 1, Disability Discrimination Disparate-Treatment, ECF No.1; and Response ¶ 26, ECF No. 24, "they assigned all of (sic) route assignments that were within her restrictions to non-disabled carriers and non-EEO filing carriers.")  "To be considered similarly situated, a comparator need not be identical but should be similarly situated 'in all *relevant* respects.'"  *Cheatham v. Postmaster General of the United States*, Case No. 20-4091, 2022 WL 1073818, at *5 (6th Cir. Apr. 11, 2022) (emphasis in original, citations omitted) ("Here, there are material differences between Cheatham and Schneider's disabilities and required accommodations. . . . Schneider thus cannot serve as a comparator, and Cheatham is unable to establish a prima facie claim of race discrimination.").

In her response, Plaintiff does not identify specific similarly situated, non-disabled carriers who were treated more favorably with respect to job, route or hour assignments.[7] Instead, Plaintiff references her Exhibit 3, which she describes as "contemporaneous descriptions of all of the adverse employment acts that Glover, Sparks and McPherson were subjecting [her] to every day," and states that within those descriptions, she "made contemporaneous descriptions of other similarly situated individuals that were outside of the protected class," as evidence of such individuals being treated more favorably than her.  (ECF No. 24, PageID.460.)  Plaintiff's Exhibit 3 is 62 pages long. The Court has reviewed this lengthy exhibit.  The Court is unable to determine the relevant status of the individuals notated in these entries.  The Court cannot determine whether the named individuals are similarly situated, disabled, non-disabled, filed an EEO complaint, did not file an EEO complaint, or even whether he or she has seniority to Plaintiff in the assignment of routes.  Further, many of the notations include undefined abbreviations and references to color-coded "crews" of employees without further explanation.   Here is an example of one of the shorter entries:

> I Cherese Johnson would like to file a grievance due to loss wages and discrimination.  On December 31, 2014, I did not get a complete assignment, although there was work available within my restriction.  I was not the only light duty carrier that was schedule (sic) to work that day, Y. London was also there and she received her 8 hour assignment and maybe even overtime.

(ECF No. 24-4, PageID.493.)

---

[7] Plaintiff's responses often combine the discussion of non-disabled carriers and carriers who had not filed EEO complaints.  Allegations regarding those who had not filed EEO complaints will also be discussed below with respect to Plaintiff's retaliation claim.  (*E.g.* Response ¶ 37, ECF No. 24, PageID.462.)

Even though the entry appears to imply that "Y. London" is another "light duty carrier," it is not clear whether Y. London shares similar restrictions or any other relevant consideration, such as seniority.  It is also worth noting that in an entry from March 15, 2015, Plaintiff wrote "I am not the only light duty employee that doesn't get 8 hours when work is available; I'm just the one that complains about it."[8]  (ECF No. 24-4, PageID.502.) It is not possible for the Court to determine from these 62 pages of notes whether there are similarly situated employees and thus establish another necessary element of Plaintiff's prima facie case of discrimination.  Plaintiff has failed to establish a prima facie claim of disability discrimination.  The Court will grant Defendant's motion for summary judgment as to Plaintiff's claim for disability discrimination.

### B.   Failure to Engage in an Interactive Process (Count III)

Defendant argues that Plaintiff failed to exhaust her claims during the EEO process and therefore Defendant is entitled to dismissal.  Defendant develops this argument as to the issue of failure to accommodate and failure to engage in the interactive process.

Plaintiff claims that she notified Defendant of the need for an accommodation, that the accommodation would not impose an undue hardship on Defendant, and that Defendant failed to engage in an interactive process.  (ECF No. 1 ¶ 84-92.)  With respect to her failure to accommodate claim (Count II), as set forth above, Plaintiff failed to show that she was "otherwise qualified" for her position where she cannot perform the essential

---

[8] *See also* May 6, 2015 entry: "I do understand that being on light duty that I am not guaranteed 8 hours, but neither is a CCA. . . . I want to know how certain light duty carriers are allowed to stay on the clock WITHOUT having an 8-hour assignment and others have to clock out or get wrote up for arbitrarily staying on the clock.  This is clearly personal this has nothing to do with my light duty status, . . ." (ECF No. 24-4, PagID.504.)

mail route delivery function of the job and she did not provide or even allege that she identified a reasonable accommodation allowing her to do so, aside from continuing to perform light duty tasks.

Likewise, Plaintiff has not established a claim for failure to engage in the interactive process.  Defendant has provided information indicating that Plaintiff's supervisors set up a DRAC meeting, and that Plaintiff did not want to be reassigned to a different craft and did not provide requested medical documentation.  She has provided no evidence to raise a genuine issue of material fact as to either of these issues or her abandonment of the interactive process.  "For employees seeking accommodations, 'the interactive process is mandatory, and both parties have a duty to participate in good faith.'"  *See Brumley v United Parcel Service, Inc*., 909 F.3d 834, 840 (6th Cir. 2018) (citations omitted) (ADA case); *see also Cheatham*, 2022 WL 1073818, at *4 (considering a failure-to-accommodate claim under the Rehabilitation Act,  "[o]nce an employee has requested an accommodation, her employer is required to engage with her in an interactive process to identify a suitable accommodation").  The Court will grant Defendant's motion for summary judgment on this claim.

### C.    Hostile Environment Retaliation (Count IV)

Finally, Plaintiff brings a claim for "disability discrimination hostile environment retaliation."  (Compl. ¶¶ 93-103, ECF No. 1.)  Defendant argues that Plaintiff fails to establish several of the elements of the claim.

To prove a claim of retaliation, a plaintiff must prove that: "(1) [s]he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the

plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment."  *Willey v. Slater*, 20 F. App'x 404, 405-06 (6th Cir. 2001) (citing *Morris v. Oldham County Fiscal Court*, 201 F.3d 784 (6th Cir. 2000)).

> Once the plaintiff establishes a prima facie case, the burden of production of evidence shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions.  The plaintiff then must demonstrate 'that the proffered reason was not the true reason for the employment decision.'  The plaintiff bears the burden of persuasion throughout the entire process.

*Id.* at 406 (citations omitted).

In her Complaint, Plaintiff alleges that she returned from sick leave for the surgical repair of her right knee on April 28, 2014.  (Compl. ¶ 13.)  She alleges that she "began filing EEO complaints in 2014 after the harassment she was subjected to when she returned from [that] sick leave."  (ECF No. 1, ¶ 15.)  Yet in her deposition, she testified that she filed the first EEO complaint in 2013, when she and Mr. Solar "had [their] issues" and she "filed a grievance based on him not giving [her her] time."[9]  (ECF No. 19-2, PageID.188.)  The parties do not dispute that she filed EEO complaints related to the disability and the failure to receive 8 hours of work, and that she engaged in protected activity.

Mr. Sparks, Mr. McPherson and Mr. Glover all appeared at a Redress meeting together, and therefore, alleges Plaintiff, all three of them were aware that she had filed an EEO complaint.  (ECF No. 19-2, PageID.181.)  Although an exact date is not cited, the

---

[9] Plaintiff also testified that Mr. Solar was the primary supervisor from 2010 to 2014 and under his supervision she was getting eight hours most of the time.  (ECF No. 19-2, PageID.178.)

parties agree that the redress meeting occurred in 2014.  (ECF No. 24 ¶¶ 5, 7; ECF No. 19, PageID.159.)  As Defendant points out, the redress meeting at which she admits the supervisors became aware of the EEO complaint, would have followed the filing of the same complaint based on the conduct she alleges is retaliatory: the failure to assign her 8 hours of work.  There is an absence of evidence that would allow finding that the supervisors were aware of her filing an EEO complaint before they assigned her less than 8 hours, the very action she alleges is retaliatory.

### 1.  Adverse Employment Action

Because of the way Plaintiff's retaliation claim is framed, the Court will analyze it considering both adverse employment action and hostile work environment (below).  An adverse employment action is a "'materially adverse change in the terms or conditions of the employment because of the employer's actions.'"  *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007) (quoting *Allen v. Mich. Dep't of Corrs.*, 165 F.3d 405, 410 (6th Cir. 1999)).  This materially adverse change "must be more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Id.* at 594 (citations omitted).   "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."  *Id.*

Plaintiff's burden of establishing an adverse action is less onerous in the retaliation context than in the discrimination context.  *See Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 67-68 (2006).  The Sixth Circuit has stated that "'if a reasonable trier of fact could conclude that a retaliatory act would deter a person from exercising [her]

rights, then the act may not be dismissed at the summary judgment stage.'" *Holzemer v. City of Memphis*, 621 F.3d 512, 524 (6th Cir. 2010) (quoting *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005)).

Plaintiff testified that around 2014, under new supervisors doing the route assignments, she was not getting eight hours of work per day to the same extent as she had been before.  (ECF 19-2, PageID.178.)  In her response and declaration, Plaintiff specifically alleges that "Glover, Sparks and McPherson resumed refusing to assign her work within her restrictions so she made requests to the union to force Glover, Sparks and McPherson to assign her work that she knew was available within her restrictions." (Response ¶ 11, ECF No. 24.)  In her testimony she identified "supervisors, Mr. Sparks, Mr. McPherson, [and] Mr. Geevarghese (sic)" as failing to give her eight hours of work in 2014.  (ECF No. 19-2, PageID.180.)  She also testified that she spoke to the station manager Mr. Glover and told him she was not getting eight hours of work.  (ECF No. 19-2, PageID.180-81.)  Although it is not clear from Plaintiff's response, she testified that she is seeking damages that include every day that she had less than eight hours of work on a regular workday.  (ECF 19-2, PageID.186.)  She also testified that if she did not get eight hours of work, she was not going to get overtime.  (*Id.*)  Plaintiff's retaliation claim raises a question of fact as to whether she suffered an adverse employment action including being assigned fewer hours and subsequently earning less money.

With respect to causal connection, however, the Court agrees with Defendant's argument.  Plaintiff fails to establish a causal connection between her EEO complaints and the failure to receive 8-hour workdays in 2014 to 2017.  "A causal link may be shown through knowledge combined with closeness in time that creates an inference of

causation. In order to make such a showing, the plaintiff must produce sufficient evidence for a reviewing court to infer that the employer would not have taken the adverse action had the plaintiff not filed a discrimination action." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561,582 (6th Cir. 2000).   Defendant argues that Plaintiff "cannot establish causation merely by alleging that some of the allegedly retaliatory conduct took place after she filed an EEO complaint." (ECF No. 19, PageID.160.) By her own admission, the same conduct (for example, a supervisor—Mr. Solar—not giving her enough hours) preceded her protected activity—it was the basis of her initial complaints. (*See also* Grievance List, ECF No. 19-10, PageID.260.) "An employment decision cannot be caused by protected activity if the decision-maker did not know about the protected activity." *Crane v. Mary Free Bed Rehab. Hosp.*, 634 F. App'x. 518, 526 (6th Cir. 2015).

In *Walborn v. Erie County Care Facility*, 150 F.3d 584 (6th Cir. 1998), the plaintiff alleged that adverse actions were taken against her after she sought reasonable accommodations under the ADA.  She filed an EEOC complaint.  *Id.* at 589.  The district court and the Court of Appeals noted that the initial weakness in the case was that the plaintiff "alleges retaliatory conduct that preceded her accommodation request and EEOC charge."  *Id.*  She had testified that "she believes she has been treated unfairly since . . . nearly a year before she requested a reasonable accommodation and two years before she filed her EEOC complaint."  *Id.*  Therefore, she had not alleged that the defendant "treated her differently since she asserted her rights pursuant to the ADA."  *Id.*  "The fact that some of the allegedly retaliatory actions took place after [the plaintiff] filed an EEOC charge is insufficient to establish the requisite causal connection."  *Id.*

Here, Plaintiff alleges adverse actions not only preceding the protected activity at issue herein, but actions taken over the course of several years.  Any argument of temporal proximity is less than tenuous.  *See generally*, *Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) ("Because the disciplinary actions occurred two to five months after Hafford filed charges, and are fairly evenly spread over a period of time, the inference of a causal connection based on temporal proximity alone is tenuous." Citations omitted.) Plaintiff has not shown evidence of knowledge or causation, and has failed to establish a prima facie claim of retaliation.

Even if the Court were to find that Plaintiff had provided the minimal evidence necessary to establish a prima facie claim of retaliation, she fails to demonstrate that Defendant's reason for giving her less than 8 hours of work was pretext.  Defendant has shown a legitimate non-discriminatory reason for its actions.  Defendant argues that Plaintiff's managers had to balance the extent of Plaintiff's restrictions "with other light duty employees who also needed work, and the need to timely deliver the mail, which led to her not receiving 8 hours of work on some days."  (ECF No. 25, PageID.589.) Defendant points out that Plaintiff argues her hours were reduced in 2014, yet this is also when her work restrictions increased.  Defendant also relies on the "statement of undisputed material facts" in an EEOC administrative law judge decision dated September 25, 2019, as evidence that Plaintiff had the second highest hours and overtime among light duty employees for at least part of the time period in which she

claims she was being discriminated against, in 2014 and 2015.[10]   (ECF No. 19-14, PageID.293-94.)

Since the Defendant would have met its burden at this step, the burden would shift to Plaintiff to demonstrate that the proffered reason was not the true reason for the employment decision.   Plaintiff does not show that Defendant's reason had no basis in fact, did not actually motivate its conduct, or was insufficient to warrant the conduct.   *See Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008).   Plaintiff seems to rely on the conclusory argument that Defendant's motion for summary judgment "must fail for never articulating a non-discriminatory or non-retaliatory reason for not providing the Plaintiff with what we now know was available work within her restrictions." (ECF No. 24, PageID.465.)   Plaintiff fails to establish a prima facie claim of retaliation, and fails to present evidence to rebut Defendant's legitimate reasons for her reduced hours. Therefore, Defendant's motion for summary judgment on the retaliation claim with respect to adverse employment actions will be granted.

---

[10] "Between June 28, 2014 and April 24, 2015, Complainant worked an average of 38.55 hours per week straight time and an average of 6.32 overtime hours per week.   This totals 44.87 combined hours per week or 8.97 hours per day.   Of the nine other city carriers or carrier technicians identified in the ROI as having light duty assignments, Complainant's combined weekly average of straight time and overtime work hours exceeds all but one."   (ECF No. 19-14, PageID.293, ¶¶ 12, 13, internal citations omitted.)   A similar analysis is included for the period between June 28, 2014 and November 6, 2015, concluding that "[o]f the nine other carriers identified in the ROI as having light duty assignments, Complainant's combined weekly average of straight time and overtime work hours exceeds all but one for the time period from June 28, 2014 to November 6, 2015."   (ECF No. 19-14, PageID.293-94, ¶17, internal citations omitted.)   To the extent that Plaintiff mentioned Y. London as another light duty carrier, the same decision and statement of uncontested facts provides that "Complainant points to Yolonda London as another light duty carrier who has never (sic) heard or seen leave early.   London averaged 40.99 hours per week, or 8.18 hours per day between June 2014 and November 2015."   (ECF No. 19-14, PageID.294, ¶ 18, internal citations omitted.)

## 2.  Hostile Environment

Finally, the Court will analyze the hostile work claim element within the context of the above retaliation analysis.  Plaintiff's complaint identifies Count IV as "DISABILITY DISCRIMINATION HOSTILE ENVIRONMENT RETALIATION."  (ECF No. 1, PageID.18.) Plaintiff alleges in the complaint that "[t]he Defendant took adverse employment actions against Plaintiff, including but not limited to a retaliatory and discriminatory hostile environment extending from April 2014 to Mid 2017 creating a pattern of harassment." (ECF No. 1, PageID.19 ¶ 96.)

> In order to establish a hostile work environment claim, an employee must show the following:  (1) the employee is a member of a protected class, (2) the employee was subject to unwelcomed retaliatory harassment, (3) the harassment was based on the employee's protected activity, (4) the harassment created a hostile work environment, and (5) the employer failed to take reasonable care to prevent and correct any harassing behavior.

*Willey*, 20 F. App'x at 406.

Under a theory of either hostile work environment or retaliatory hostile work environment,

> A hostile work environment occurs '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'  Both an objective and a subjective test must be met: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive.   .  .  . Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment 'include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'

*Id*.

In the EEO submissions provided with Plaintiff's response, Plaintiff alleges retaliation based on the failure to receive "complete assignment(s)".  (ECF No. 24-2.) Plaintiff's allegations of harassing conduct fail to meet the objective test for hostile environment.  She has not provided evidence, nor any specific description of conduct or an environment that a reasonable person would find hostile or abusive.  To the extent that Plaintiff alleges that the harassment is contained in the 62 pages of "contemporaneous descriptions" at Exhibit 3, these address the assignment of work and overtime, and do not evidence conduct that a reasonable person would find hostile or abusive.  Plaintiff herself classifies this "harassment" as "adverse employment acts." (ECF No. 24, ¶ 42; see also ¶ 40 ""adverse employment acts".)  Plaintiff alleges that "Glover, Sparks and McPherson began to humiliate Plaintiff by giving away assignments that were within her restrictions to other carries while they were right in front of her."  (ECF No. 24, ¶ 27.)  This may reveal Plaintiff's subjective belief that she was the victim of retaliatory harassment, however it does not evidence harassment severe enough that a reasonable person would find it hostile or abusive.

As the Court noted above, Plaintiff signed a version of her response to the motion for summary judgment and captions it a "declaration."  The declaration and the response make general allegations of being subjected to a "threatening and humiliating" hostile environment by these supervisors.  (Response, ECF No. 24, PageID.457 ¶ 17; Johnson Decl. ECF No. 24-6, PageID.576 ¶ 17.)  Defendant argues that "[a] directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction."  *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006).  If such a circumstance arises, "a district court deciding the

admissibility of a post-deposition affidavit at the summary judgment stage must first determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony." *Id.* In this instance, the Court need not reach this determination. Though the "declaration" is signed, it is unsworn and contains no statement that is submitted under penalty of perjury.[11] *See Hart* v. Lutz, 102 F. App'x 10, 13 (6th Cir. 2004) ("the district court properly disregarded the 'affidavits' as unsworn statements"); 28 U.S.C. § 1746 (unsworn declarations under penalty of perjury). This "declaration" is not enough to contradict Johnson's prior sworn testimony. Further, to the extent that Plaintiff uses the response and "declaration" to generally classify the supervisors' actions and the work environment as "threatening," "humiliating," "harassing," and "abusive," the specific underlying allegations about the action taken by the supervisors does not change from that alleged in the deposition: the failure to assign work. "[C]onclusory statements, subjective beliefs, or intuition cannot defeat summary judgment." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 519 (6th Cir. 2009) (citing *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996)).

In her sworn deposition, Plaintiff was asked in detail about harassment by her supervisors:

> Q: Okay. Did they make any comments, any of the supervisors at any point, make any comments about your disability that you recall?
>
> A: Not that I can recall offhand, no.
>
> Q: Are you also claiming that your supervisors harassed you?

---

[11]"If sworn as a witness, Affiant can testify that to the best of my knowledge, in good faith as to those things I have personal knowledge of, they are true under penalty of perjury." (Johnson Decl., ECF No. 24-6 PageID.585.) As discussed above, the "declaration" contains statements of things not within Plaintiff's personal knowledge and appears to contain legal conclusions and statements of law, as well.

A: Yes, they harassed me.

Q: And tell me which supervisors harassed you?

A: All of them.

Q: All of the ones we've identified?

A: Correct.

Q: Okay.  And explain what they did that you consider harassment?

A: Not allowing me to work.  You figure—we'll just send her home.

(Johnson Dep. ECF No. 19-2 PageID. 182.)

The record is devoid of evidence of actions or an environment that a reasonable person would find hostile or abusive.  Defendant's motion for summary judgment on Plaintiff's hostile environment retaliation claim is granted.

## IV.    Conclusion

For the above-stated reasons, Defendant's motion for summary judgment is GRANTED.  Plaintiff's claims are dismissed with prejudice.

SO ORDERED.

<u>s/Nancy G. Edmunds</u>
Nancy G. Edmunds
United States District Judge


Dated: February 1, 2023


I hereby certify that a copy of the foregoing document was served upon counsel of record on February 1, 2023, by electronic and/or ordinary mail.

<u>s/Lisa Bartlett</u>
Case Manager